IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON


LARRY L. KEYSER,

      Plaintiff,


v.                            Civil Action No. 2:04-cv-00544


JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.


## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are Plaintiff's Motion for Summary Judgment and Defendant's Motion for Judgment on the Pleadings.

Plaintiff, Larry L. Keyser (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on December 14,

2001,[1] alleging disability as of February 22, 2001, due to scoliosis, arthritis, back pain, stomach problems, arrhythmia, and depression. (Tr. at 701.)  The claims were denied initially and upon reconsideration. (Tr. at 658-9, 662-5, 670-1.)  On March 3, 2003, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 672.)  The hearing was held on October 9, 2003 before the Honorable Don C. Paris. (Tr. at 36-76.)  By decision dated November 26, 2003, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 20-28.)  The ALJ's decision became the final decision of the Commissioner on April 9, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 12.)  On June 2, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a

---

[1] Claimant was previously awarded DIB from February 21, 1994 through April 4, 1996 due to pain and healing complications associated with his severe left leg fracture. (Tr. at 576-82, 636.) He applied for SSI and DIB again in 1998 and 1999, but these were denied. (Tr. at 187-89, 566-68, 633-47.)  The Appeals Council denied review on July 19, 2002. (Tr. at 655-56.)  Claimant did not pursue any further appeal of that decision. (Tr. at 20.)

2

continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2003).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's

3

remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2003).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 21, Finding No. 2, tr. at 27.)  Under the second inquiry, the ALJ found that Claimant suffers from the impairments of scoliosis with low back pain, together with borderline intellectual functioning. He is also status post compound fracture of the left leg and left knee surgery.  The ALJ decided that these conditions, when considered collectively, are severe.  (Tr. at 21, Finding No. 3, tr. at 27.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 22-23, Finding No. 4, tr. at 27.)  The ALJ then found that Claimant has a residual functional capacity for sedentary work, reduced by nonexertional limitations. (Tr. at 25-6, Finding No. 7, tr. at 27.)  As a result, Claimant cannot return to his past relevant work, which was of a greater

4

exertional level.   (Tr. at 23, Finding No. 8, tr. at 27.)
Nevertheless, the ALJ concluded that Claimant could perform jobs
such as video surveillance monitor, product inspector, and package
machine tender, which exist in significant numbers in the national
economy.  (Tr. at 26, Finding No. 9, tr. at 27.)   On this basis,
benefits were denied.  (Tr. at 28, Finding No. 12, tr. at 27.)

<u>Scope of Review</u>

The sole issue before this court is whether the final decision
of the Commissioner denying the claim is supported by substantial
evidence.   In <u>Blalock v. Richardson</u>, substantial evidence was
defined as

> "evidence which a reasoning mind would accept
> as   sufficient   to   support   a   particular
> conclusion. It consists of more than a mere
> scintilla of evidence but may be somewhat less
> than a preponderance. If there is evidence to
> justify a refusal to direct a verdict were the
> case before a jury, then there is 'substantial
> evidence.'"

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting
<u>Laws v. Cellebreze</u>,   368   F.2d   640,   642   (4th   Cir.   1966)).
Additionally, the Commissioner, not the court, is charged with
resolving conflicts in the evidence.  <u>Hays v. Sullivan</u>, 907 F.2d
1453, 1456 (4th Cir. 1990).   Nevertheless, the courts "must not
abdicate their traditional functions; they cannot escape their duty
to scrutinize the record as a whole to determine whether the
conclusions reached are rational."  <u>Oppenheim v. Finch</u>, 495 F.2d
396, 397 (4th Cir. 1974).

5

A careful review of the record reveals that the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was 36 years old at the time of the administrative hearing. (Tr. at 41.) He is a high school graduate. (Tr. at 43.) In the past, he worked as a machine operator and as a laborer at a power plant and at a brickyard. All of these jobs involved heavy lifting. (Tr. at 44-5.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence, and will discuss it further below as necessary.

Due to Claimant's prior applications, awards and denials, the time period under consideration in this case is restricted to February 22, 2001 through November 23, 2003, the date of the ALJ's decision. Claimant did not pursue a civil action on his 1998 and 1999 claims; accordingly, the previous denial of February 21, 2001 is binding. There is no basis to reopen that decision. (Tr. at 20, 20 C.F.R. § 404.988-989, § 416.1488-89(2003).)

Because *res judicata* bars consideration of the period through February 21, 2001, medical records prior to that time are summarized for background information only.

*A. Physical Impairments*

On February 21, 1994, Claimant fell 15 feet from a platform and sustained an open fracture of his left tibia and fibula. (Tr.

at 282-9, 314.)   He suffered various healing complications and infections, for which he underwent numerous operations in 1994 and 1995, including bone grafts and pin replacements.  (Tr. at 290-300, 301-2.)  On December 5, 1996, Claimant's physician observed that he had a fairly normal gait despite a limp and calf atrophy. Claimant's x-rays indicated that his leg was solidly healed with good alignment, and his physician discharged him from treatment. (Tr. at 305.)

Claimant also underwent a meniscectomy and chrondroplasty of his left knee and a closed reduction and fixation of the fifth metacarpal of his left hand in May, 1999.  (Tr. at 406-09, 477-79.) Both of these injuries healed very well.  (Tr. at 455.)

During the relevant time period, records indicate that Claimant treated at Ebenezer Medical Outreach ("Ebenezer") for low back pain, GERD, insomnia, chronic leg pain and parasthesias, and depression.  (Tr. at 807, 810, 821-32.)

An MRI of Claimant's lumbar spine on October 20, 2001 showed dextroscoliosis and disc space narrowing at L5-S1 with surrounding bony proliferation.  No acute bony abnormality was noted.  (Tr. at 825.)  X-rays of his left leg on January 23, 2002 indicated that the fractures had healed, and there was no evidence of hardware loosening, osteolytic destruction, or periosteal reaction. (Tr. at 820.)  A second MRI conducted on February 1, 2002 showed a small central disc herniation at the L4-5 level with thecal sac

impression.    (Tr. at 816.)    The report also indicated: "disc desiccation is noted at the T11-T12 disc and a there is a large right paramedian disc herniation noted at the T-11 to T-12 level causing cord deformity and cord impression."

Imre Szendi-Horvath, M.D., Claimant's physician who ordered these tests, indicated on January 18, 2002 (prior to the testing) that Claimant would probably be able to return to work.  He also noted that Claimant needed treatment for clinical depression.  (Tr. at 821.)

Ashok Mehta, M.D. performed a physical evaluation of Claimant at the request of the Disability Determination Service on March 28, 2002, and issued his report on May 3, 2002. (Tr. at 775-79.)  Dr. Mehta's specialty is internal medicine.  (Tr. at 846.)  Claimant reported to Dr. Mehta that he had back pain which increased upon walking or bending.  He had no weakness in his lower legs.  He reported a history of reflux disease.  (Tr. at 775.)

Dr. Mehta, who had the benefit of the February, 2002 MRI report, observed that Claimant was stable in station, and was comfortable in sitting and supine positions.    (Tr. at 776.) Claimant had decreased range of motion in his lumbar spine and left knee, but full range of motion in his neck, shoulders, elbows, wrist, hips, and ankles.  (Tr. at 778-9.)  He could fully extend his hands, make a fist, oppose his fingers, and engage in normal fine manipulation.  Claimant's grip strengths and upper extremity

strengths were normal.  (Tr. at 778.)

Claimant had tenderness at L4-L5 associated with muscle spasms.  (Tr. at 777.) His straight leg raising test was negative on the right and 30 degrees on the left.  (Tr. at 779.)  Claimant could stand on his toes but not his heels.  He was able to squat and rise.  (Tr. at 777.) His left leg muscle strength was slightly decreased, 4/5, which Dr. Mehta noted as a weakness. (Tr. at 777, 779.)

State agency medical source Marcel Lambrechts, M.D. completed a Physical Residual Functional Capacity Assessment form concerning Claimant on May 16, 2002.  (Tr. at 780-87.)  The Assessment indicates that he reviewed the consultative examination by Dr. Mehta dated May 3, 2002, but no other records. (Tr. at 787.) The Assessment describes Claimant's allegations as "back pain, stomach problems, arrythmia, depression, scoliosis, [and] arthritis."  The primary diagnosis is "low back pain." (Tr. at 780.)  The Assessment does not note the herniations at T-11 to T-12, nor does it mention Claimant's history relating to his severe leg fracture.

Dr. Lambrechts opined that Claimant could lift 20 pounds occasionally, 10 pounds frequently, could stand or walk or sit about 6 hours in a normal 8 hour workday, and could push and pull without restriction.  He found that Claimant could occasionally climb, balance, stoop, kneel, crouch, and crawl, noting that Claimant's low back pain caused decreased range of motion.  (Tr. at

781-2.)  Claimant had no manipulative, visual, or communicative limitations.  (Tr. at 783-4.)  He had no environmental limitations, except that he should avoid concentrated exposure to vibrations.  (Tr. at 784.)  Dr. Lambrechts remarked that Claimant's symptoms seemed to be out of proportion to the physical findings, but that he was restricted to light work.  (Tr. at 785.)

Claimant returned to Ebenezer on August 23, 2002 with reports of numbness and parasthesias in his left foot and his hands.  (Tr. at 810.)  The examiner, Ijaz Ahmad, M.D., also evaluated Claimant's low back pain on that date, and found that Claimant had compression in a disc at D[sic; T]11/D12.  Claimant did not have any long tract signs, but was told he could make an appointment with a neurosurgeon.  Dr. Ahmad ordered an EMG of Claimant's upper extremities due to his hand parasthesias and complaints that pain sometimes radiated from his neck into his left arm.  (Tr. at 810.)  There was no EMG report in the file, and it does not appear that Claimant underwent the study.

On January 15, 2003, a physician at Ebenezer filled out a prescription form which stated that Claimant was unable to work due to back pain.  He also prescribed a cane. (Tr. at 805.)  There are no notes corresponding to an office visit of that date in the record.

On February 4, 2003, state agency medical source Uma Reddy, M.D. completed a Physical Functional Capacity Assessment form. (Tr.

10

at 836-43.)  She summarized Claimant's allegations as "numbness in the left arm and hand, back and leg problems." (Tr. at 836.)  Dr. Reddy's findings were identical to those of Dr. Lambrechts with respect to Claimant's postural, manipulative, visual and communicative limitations, as well as environmental limitations, except that she opined Claimant should avoid concentrated exposure to hazards.  (Tr. at 838-40.)  She likewise opined that the severity or duration of Claimant's symptoms were disproportionate to that which would be expected on the basis of Claimant's medically determinable impairments. (Tr. at 841.)  Dr. Reddy noted that the May 3, 2002 report from Dr. Mehta stated that Claimant had no need for ambulatory aids; that he had a small central herniation; that he could not stand on his heels; that he could squat and rise; that his strength in his left leg was 4/5, but he had no atrophy; that he had a history of left tibia and fibula fracture with multiple surgeries, and that he had no neurological deficit. (Tr. at 843.)

### B.  Mental Impairments

While Claimant's medication chart reflects that his treating physicians at Ebenezer prescribed Prozac and Klonopin for him, there are no notes reflecting mental health treatment, and Claimant confirmed at the hearing that he has not been referred for counseling nor undergone any mental health treatment. (Tr. at 812, 54-55.)  In his physical examination, Dr. Mehta reported that

11

Claimant's mental status and intellectual functioning appeared normal. (Tr. at 776.)

On April 16, 2002, Rhonda Milan, supervised psychologist, and Catherine Van Verth Sayre, M.A., licensed psychologist, performed an "Adult Mental Profile" of Claimant. (Tr. at 772-4.) Claimant told them that his upper and lower back hurt constantly, that he was unable to do anything, was unable to sleep, and stayed nervous. He said he was unable to lift, climb, crawl, stoop or bend, and that he could not sit for a long time nor walk on cement. He reported stomach pain, swelling and reflux. He reported that he felt like crying approximately twice a week for an hour due to his inability to do anything. He stated that he had no energy, and had suicidal ideations, but no intent or means. (Tr. at 772.) He had no history of inpatient mental health treatment and only one day of outpatient treatment in 1996 or 1997. He further described auditory hallucinations twice a week. (Tr. at 773-4.)

Ms. Sayre and Ms. Milam observed that Claimant had downcast eye contact, depressed mood and restricted affect, poor judgment, average concentration, and normal persistence and pace. They opined that his immediate memory was normal, but his recent memory was severely deficient based on his ability to recall one word out of four after thirty minutes. (Tr. at 774.) Claimant had no problems with thought process. He was cooperative during the exam and had relevant and coherent speech. (Tr. at 774.) He came alone

12

to the examination, having driven his wife's car 15 minutes to the office.  (Tr. at 772.)

Ms. Sayre and Ms. Milam diagnosed generalized anxiety disorder; major depressive disorder, single episode with psychotic features; and chronic back and leg pain, arthritis, scoliosis, high blood pressure and left leg numbness.  They indicated that Claimant's prognosis was fair.  (Tr. at 774.)

State agency source Rosemary Smith, Psy.D. completed a Psychiatric Review Technique on May 17, 2002 based upon records from Ebenezer, Claimant's visit with Ms. Sayre and Ms. Milam, and Dr. Mehta's exam.  (Tr. at 788-801.) She opined that Claimant suffered from Affective Disorders (12.04) and Anxiety-Related Disorders (12.06) but that these impairments were not severe.  (Tr. at 788.)  Specifically, she opined that Claimant exhibits major depressive disorder and generalized anxiety disorder, neither of which precisely satisfy the diagnostic criteria.  (Tr. at 791, 793, 800.)  She wrote:

> Claimant reports ADL's [activities of daily living] are limited due to physical problems.  Although he reports aud[itory] hallucinations, his thought processing was normal, the physical doctor did not note problems, and he is not on any psychotic medication.  The [District Office] did not observe any problems.  Claimant is not credible.

(Tr. at 800.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not

13

supported by substantial evidence because the ALJ erred (1) in finding that Claimant was not credible and that his claims were not supported by substantial evidence; (2) in failing to afford significant weight to the psychological report of state agency medical source Catherine Van Verth Sayre, M.A.; (3) in posing an incomplete hypothetical to the vocational expert. (Pl.'s Br. at 11-18.)

> I.   <u>Credibility and Supporting Evidence</u>

The ALJ determined that Claimant had the residual functional capacity for sedentary work, based on the medical evidence pertaining to Claimant's collected impairments of left leg fracture, low back pain, and depression. (Tr. at 22, 24-25.) The ALJ restricted Claimant from climbing ropes, ladders and scaffolding, kneeling, crouching, and crawling, and from concentrated exposures to vibrations and hazards. He further limited Claimant to simple, repetitive tasks, due to his borderline intellectual functioning. (Tr. at 23, 25.) The ALJ incorporated these restrictions in his hypothetical to the vocational expert, Mr. Joseph Woolwine. (Tr. at 72-3.) Given those restrictions, Mr. Woolwine opined that Claimant could perform jobs such as a surveillance monitor, product inspector, production inspector, and a package machine handler. (Tr. at 73.)

The ALJ then asked Mr. Woolwine for his opinions as to Claimant's employability assuming all of Claimant's complaints were

credible and supported by credible medical evidence.  (Tr. at 74.)
Claimant had testified that he took medicine for nervousness, for
his heart rate and shortness of breath (tr. at 55-6); that he
required a driver if he traveled long distances (tr. at 59); that
he was unable to move his left foot up and down (tr. at 64); that
his left leg gave way due to weakness and that he wore a brace
which extended from his ankle to his knee (tr. at 65-6); that his
low back pain was such that his wife had to help him out of bed
(tr. at 66); that his back pain radiated into both legs (tr. at
68); that he was unable to turn his head to the left (tr. at 68);
that he had trouble lifting and gripping when using his hands and
arms on a repetitive basis due to carpal tunnel syndrome (tr. at
69); that pain radiated into his left arm when he leaned forward
(tr. at 69); that his multiple medications caused drowsiness (tr.
at 70); and that he had low energy, feelings of worthlessness and
thoughts of harming himself. (Tr. at 71.)  Mr. Woolwine testified
that if all of this were medically verified, there would not be any
jobs available for Claimant.   (Tr. at 74.)   In response to
questioning by counsel, Mr. Woolwine opined that Claimant would not
be employable if he could not work at least six hours out of an
eight hour work day, nor if he required unscheduled breaks of 30
minute duration in order to lie down or use hot or cold packs.
(Tr. at 74-5.)

     Claimant argues that the ALJ erred in failing to find his

complaints fully credible, and in failing to incorporate those com-
plaints into his first hypothetical, upon which he ultimately
relied. (Pl.'s Br. at 9-15.)  He argues that objective medical
evidence documents his leg injury, and that the ALJ erred in
relying on the report of Dr. Lambrechts when making his findings.
(Pl.'s Br. at 12-13.)

Social Security Ruling 96-7p states that factors in evaluating
the credibility of an individual's statements about pain or other
symptoms and about the effect the symptoms have on his or her
ability to function must be based on a consideration of all of the
evidence in the case record.  This includes, but is not limited to
medical signs and laboratory findings; diagnosis, prognosis, and
other medical opinions provided by treating or examining physicians
or psychologists and other medical sources; and statements and
reports from the individual and from treating or examining
physicians or psychologists and other persons about the
individual's medical history, treatment and response, prior work
record and efforts to work, daily activities, and other information
concerning the individual's symptoms and how the symptoms affect
the individual's ability to work.  No symptom or combination of
symptoms can be the basis for a finding of disability, no matter
how genuine the individual's complaints may appear to be, unless
there are medical signs and laboratory findings demonstrating the
existence of a medically determinable impairment(s) that could

16

reasonably be expected to produce the symptoms. If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities. SSR 96-7p.

Here, the limitations Claimant alleged did not correlate with the objective medical evidence. First, the ALJ noted that left leg x-rays dated January 23, 2002 showed that Claimant's 1996 leg fractures were healed, with no evidence of hardware loosening, osteolytic destruction or periosteal reaction. (Tr. at 24, citing tr. at 820.) He noted that Claimant did not have disuse atrophy in his legs. (Tr. at 25, citing tr. at 777.) The ALJ observed Dr. Mehta's report that Claimant was stable in station and did not require an ambulatory aid, and that he was comfortable standing and sitting. He considered Dr. Mehta's finding that Claimant's left leg strength was 4/5, that all sensory modalities were intact and deep tendon reflexes were present in all four extremities. The ALJ also considered Dr. Mehta's finding that Claimant could stand on his toes, but not his heels, and could squat and rise. (Tr. at 24, citing tr. at 774-7.)

The ALJ observed that no notes indicated any objective findings or neurological deficits due to back pain, and that

17

Claimant had not been referred for physical therapy or pain
management. (Tr. at 25.) Indeed, none of Claimant's records
indicated that his left leg complaints would have precluded him
from sedentary work. Nor did his physicians require him to prop
his leg up or apply ice or heat packs as was inferred at the
hearing. As the ALJ noted, while Claimant was prescribed a cane,
there were no corresponding notes describing why this was done.
(Tr. at 805.)

The ALJ found that the record did not support the extreme
symptoms and limitations Claimant alleged, nor his level of
inactivity. He observed that there were few objective findings in
the record, and no serious side effects from Claimant's current
medications were documented. There was no record of diagnosis or
treatment for the carpal tunnel syndrome Claimant alleged; to the
contrary, Dr. Mehta found that Claimant's grip strength was 5/5.
(Tr. at 25, citing tr. at 778.) Elsewhere in his opinion, the ALJ
noted Dr. Mehta's findings that Claimant could write and pick up a
coin with either hand without difficulty. (Tr. at 24.) The ALJ
stated that in light of these inconsistencies, he found Claimant's
allegations less than credible, and that Claimant was not unable to
perform sedentary work. (Tr. at 25-6.)

Claimant argues that the ALJ erred in relying upon the opinion
of state agency source Dr. Lambrechts, because that review did not
include Claimant's leg complaints. (Pl.'s Br. at 12-13.) However,

18

as the opinion indicates, the ALJ afforded Dr. Lambrechts' opinion only that weight generally afforded non-treating, non-examining doctors.  (Tr. at 26, citing Exhibit B-5F, tr. at 780.) Moreover, the ALJ imposed greater restrictions on Claimant's capacity than the light duty work Dr. Lambrechts allowed; he restricted Claimant to a particular range of sedentary work which he found "more appropriate and consistent with the objective medical evidence of record." (Tr. at 26.)  From this, coupled with the ALJ's preceding thorough discussion of the medical evidence, it is clear that the ALJ did not base his functional capacity assessment upon Dr. Lambrechts' opinions.

Claimant next argues that the ALJ erred in discounting the limitations Claimant described in his hands. (Pl.'s Br. at 13-14.) However, as indicated above, there was no objective evidence that Claimant had carpal tunnel syndrome or had ever treated for same. Claimant offered only his own testimony as to these complaints, which were contradicted by the objective medical findings of Dr. Mehta, supra, as noted by the ALJ.  (Tr. at 24, 25.)

While Claimant alleges that his disc herniations at T-11 to T-12 might produce such complaints, again, his argument has no clinical foundation.  Claimant was instructed to have an EMG study, but none is contained in the record.  Without some clinical notes, findings, or treatment records showing that Claimant's disc herniations produced the symptoms and limitations he alleges,

Claimant's position would require the ALJ to make assumptions as to the possible effects of his conditions.  This position fails under SSR 96-7P. The ALJ properly declined to incorporate unsubstantiated carpal tunnel complaints into his hypothetical question.

Finally, Claimant contends that the ALJ erred by failing to incorporate his complaints of severe low back pain into his hypothetical.  (Pl.'s Br. at 14-15.)  While the ALJ did not specifically mention the phrase "low back pain," he did incorporate restrictions  accommodating that complaint into his question: "he has a back impairment....he's limited to sedentary exertional work. He can never climb ladders or ropes.  Never balance, kneel, crouch, or crawl.  He should avoid concentrated exposure to vibration and hazards.  He experiences mild to moderate pain."  (Tr. at 73.) Claimant does not argue that the ALJ should have posed any other restrictions in his question, and it does not appear from the record that any physician imposed any greater restrictions due to back limitations.  Hence, the fact that the ALJ did not state the question in the precise manner suggested by Claimant was inconsequential.

The court proposes that the presiding District Judge find that the ALJ's assessment of Claimant's credibility was supported by substantial evidence.

B.   Psychological Consultation

Claimant argues that the ALJ should have afforded greater

weight to the opinions of Ms. Milam and Ms. Sayre. (Pl.'s Br. at 15-17.) Having performed a mental status examination and CI [clinical intake(?)], they diagnosed a generalized anxiety disorder and major depressive disorder, single episode with psychotic features. (Tr. at 774.) They opined that Claimant exhibited poor judgment, and appeared depressed with downcast eyes and restricted affect. He obsessed about his inability to walk or to pay his bills. (Tr. at 774.)

Claimant suggests that Ms. Sayre was a treating psychologist; however, the record shows that she and Ms. Milam performed a one-time consultative examination. (Tr. at 772.) As such, their opinions are evaluation according to the regulations. As the ALJ noted, their opinions were not consistent with the other medical evidence of record. (Tr. at 22.) While Claimant had been prescribed medication for symptoms of depression and anxiety, he had not been prescribed any antipsychotic medications, nor had he undergone any mental health treatment. (Tr. at 21-22, citing tr. at 833.) Dr. Mehta did not observe any mental abnormalities (tr. at 777), and Claimant was able to respond appropriately to a district office representative and exhibit normal understanding, coherency and concentration. (Tr. at 22, citing tr. at 739.)

The ALJ found that Claimant's activities of daily living suggested that he had only a mild restriction in this area and in maintaining social functioning. (Tr. at 22.) Claimant testified

that he took care of his own personal needs, and that he could fix a sandwich or drive to Pt. Pleasant to get something to eat or attend doctors' appointments. (Tr. at 22, <u>citing</u> tr. at 58, 59-60, 128.) He visited with his sister and father. (Tr. at 60.) The ALJ found that he had no more than mild difficulties in maintaining concentration, persistence, and pace. (Tr. at 22.) His concentration was adequate on the psychological evaluation (tr. at 774), and he stated at the hearing that he was able to follow television shows without difficulty. (Tr. at 22, <u>citing</u> tr. at 55.) He had no extended periods of decompensation documented and none of the "C" criteria were present.

Claimant argues that a consultative evaluation by Lisa C. Tate, M.A., in 1999, in which she diagnosed Depressive Disorder NOS [not otherwise specified], should have bolstered the weight of Ms. Sayre's opinions. (Pl.'s Br. at 16.) However, Claimant's argument that his depression was disabling is seriously undercut by the fact that despite this 1999 diagnosis (prior to the relevant time period), he did not seek mental health treatment[2] at any time during the four years preceding the ALJ's decision. Moreover, Ms. Tate did not conclude that Claimant had psychotic features associated with his depression. (Tr. at 490-6.) Ms. Tate listed Claimant's activities of daily living, and concluded that he had "fair" social functioning, and only a "mild" impairment in

---

[2] Excluding the medications that were prescribed at Ebenezer.

concentration.  (Tr. at 496.)

The court proposes that the presiding District Judge find that the ALJ's decision to afford little weight to Ms. Milam's and Ms. Sayre's opinions was supported by substantial evidence.

C.   Hypothetical Question

Claimant concludes his Brief with a renewed argument that the ALJ's hypothetical question was inadequate. He claims that the ALJ should have included further limitations as to his complaints of severe pain and depression, difficulties with his left leg, and his limited use of his hands. (Pl.'s Br. at 17-8.)

As explained above, the medical record concerning Claimant's alleged depression is scant; in fact, Claimant had not sought mental health treatment. While Claimant's treating physicians prescribed anti-depressant medications, they did not describe his condition or any limitations caused by his condition in their notes.

Likewise, the ALJ declined to include Claimant's complaints of his inability to flex his left foot.  No medical source found that Claimant was incapable of performing sedentary work due to this purported limitation.   To the contrary, Claimant's treating physician opined that he could probably return to work following rehabilitation.  (Tr. at 24, citing tr. at 821.)  Dr. Mehta found only a slight weakness in Claimant's left lower extremity, 4/5. There was no visible muscle atrophy, and while Claimant could not

stand on his heels, he was able to stand on his toes, and could squat and rise. (Tr. at 24, <u>citing</u> tr. at 777.) His gait was not lurching, unsteady or unpredictable.  (Tr. at 776.)

Finally, Claimant argues that the ALJ erred by failing to pose restrictions on Claimant's ability to repetitively use his hands. (Pl.'s Br. at 18.)  As indicated above, there was no medical evidence supporting weakness in Claimant's hands or carpal tunnel syndrome he alleges.  His grip strength was 5/5 bilaterally.  He could write and pick up coins without difficulty. (Tr. at 24, <u>citing</u> tr. at 778, 777.)

The court proposes that the presiding District Judge find that the ALJ's hypothetical question was proper and was supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** the Plaintiff's Motion for Summary Judgment, **GRANT** the Defendant's Motion for Judgment on the Pleadings, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of

24

objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

 June 14, 2005
         Date

*Mary E. Stanley*

Mary E. Stanley
United States Magistrate Judge